331 So.2d 506 (1976)
Ray G. HARRINGTON, Plaintiff and Appellant,
v.
J. C. UPCHURCH, Defendant and Appellee.
No. 5405.
Court of Appeal of Louisiana, Third Circuit.
April 14, 1976.
Rehearing Denied May 19, 1976.
Writ Refused September 8, 1976.
*507 Levingston, Ezell & Liles by Henry R. Liles, Lake Charles, for plaintiff-appellant.
Joseph W. Greenwald, Lake Charles, for defendant-appellee.
Before CULPEPPER, DOMENGEAUX and PAVY, JJ.
CULPEPPER, Judge.
This is a suit for damages for personal injuries sustained by plaintiff when the vehicle he was driving collided with a cow on the highway. Defendant is the alleged owner of the cow. A jury found that defendant owned the cow, but that he was not negligent. The jury did not reach the question of plaintiff's contributory negligence. From a judgment dismissing his suit, plaintiff appealed.
The issues are: (1) Did defendant own the cow? (2) Was defendant negligent? (3) Was plaintiff contributorily negligent?
The general facts of the case are essentially undisputed. On September 25, 1973, at approximately 11:30 p.m., Ray G. Harrington was driving in an easterly direction on Louisiana Highway 12 between DeQuincy, Louisiana and Ragley, Louisiana. It was a clear dry night. The road was a two-lane, blacktop highway with a posted speed limit of 65 miles per hour at the time of the accident. That portion of Louisiana Highway 12 where the accident occurred is not covered by LSA-R.S. 3:2803 which prohibits livestock from running at large on certain listed highways of this state. Nor is there any state statute or local ordinance prohibiting cattle from running at large in the area in question.
Harrington testified he was driving about 60 miles per hour. He says the last *508 thing he remembered was seeing a cow dart from the south side of the highway and hit his right front fender. After hitting the cow, Harrington's automobile went out of control and traveled a distance of about 670 feet down the highway, where it struck the north abutment of a concrete bridge. The automobile came to rest on the north shoulder. The cow was either knocked, shoved or carried by the car to a point on the north shoulder of the highway.
As a result of the accident, Mr. Harrington's car was a total loss. Approximately $1300 in damages was caused to the bridge. Mr. Harrington suffered severe personal injuries. The cow was killed.
OWNERSHIP OF THE COW
The first issue is whether defendant owned the cow. The evidence shows the defendant owned a farm located on the north side of Highway 12 just west of the scene of the accident. He testified that while he lived there he maintained fences around his farm and kept his cattle in his pasture. In June of 1973, which was approximately four months before the accident, he moved from the farm to another home in the city of DeQuincy and decided to sell his cattle. Defendant contends that by September 22, 1973, which was three days before the accident, he had sold the last of his cattle. He says he sold six to Mr. Cole, who put them on the open range directly north of defendant's farm, and that he sold most of his other cattle at a livestock auction in DeQuincy. Defendant's testimony is corroborated by certain receipts from the livestock auction. Mr. Larry Coker, who was living in the house on defendant's farm at the time of the accident, testified that as far as he knew defendant did not own any cattle. But Coker admitted under cross-examination that he did not know whether defendant still owned cattle on the day of the accident.
Although this is "open range" country, where cattle are free to roam, fences had been constructed along the sides of the highway. The police jury had paid for the posts and the wire, and each landowner had constructed and maintained fences on his property. The evidence shows that some time before the accident, a woods fire occurred north of Highway 12, and the State Forestry Department had cut the fence along the highway to move its equipment to the scene of the fire. After the fire, the fence was not repaired. There was a gap in the fence through which cattle could easily pass from the open range to the highway. This gap was not on land owned by the defendant. It was on the property adjoining defendant's farm on the east. Pictures taken after the accident show that this hole in the fence had been repaired by someone. Mr. Colvin Reneau testified that he had seen some of defendant's employees checking the fences along the highway the day after the accident. Of course, an inference which the jury could have drawn from this testimony is that defendant still had cattle on the open range in this area, and that his employees repaired the fence to prevent another accident of this kind.
Plaintiff introduced testimony which showed that the cow in question was branded with the letters "JCU". Also introduced was evidence which showed that this is the registered brand of the defendant, J. C. Upchurch. LSA-R.S. 3:740 provides that a certified brand on an animal is prima facie evidence of ownership.
Several witnesses testified that defendant had allowed his cattle to run at large on the open range. Some of these witnesses stated they had seen defendant's cows on the highway. One witness in particular, Mr. Colvin Reneau, testified that on the day of the accident at about 5:00 p.m. he had seen some cows on the highway near the scene of the accident and had chased them back through the hole in the *509 fence. He remembered the particular reddish-brown cow that was hit by plaintiff as being one of the cows which he drove from the highway. Mr. C. J. Reneau, Colvin Reneau's father, also positively identified the cow in question as having been owned by Mr. Upchurch. He testified further that he had seen this cow out of the fence several times.
The members of the jury, who saw and heard this conflicting testimony, believed that defendant owned the cow. There is clearly a reasonable evidentiary basis for this finding of fact. Canter v. Koehring Company, La., 283 So.2d 716 (1973).
NEGLIGENCE OF THE DEFENDANT
The next issue is whether the defendant was negligent. Our first question is whether the district judge correctly charged the jury. In his instructions, the judge stated:
"Article 2321 of our Louisiana Civil Code provides in part as follows:
"`The owner of an animal is answerable for the damage he has caused; * * *' "However, that article is subject to the negligence or fault requirements of Articles 2315 and 2316 of the Civil Code, which I have heretofore quoted for you. In other words, the owner of livestock is liable for damages done by an animal only in cases where the owner was guilty of some fault or negligence in his ownership or possession of that animal."
In addition, the judge stated:
"I further charge you that under a statute adopted by the Louisiana Legislature, and in some instances by parish or municipal ordinances, it is unlawful for an owner to knowingly, willfully or negligently permit his livestock to go at large upon certain public highways in this state. However, the state statute only applies to and affects that portion of Louisiana Highway 12 between the Texas border and the line dividing Calcasieu and Beauregard Parishes, and there is no parish ordinance prohibiting livestock from running at large on that part of the highway located in Beauregard Parish. In open range areas, that is, in areas where there is no stock law or ordinance prohibiting an owner from allowing his animals to roam at large, the owner is under no duty to keep his livestock enclosed.
"And under the general law of this state and the jurisprudence where there is no local ordinance or statute prohibiting owners from permitting their stock to run at large, the owner is not negligent in doing so."
The first specification of error urged by counsel for plaintiff-appellant is that the trial judge's charge failed to instruct the jury as to the law of "strict liability". Counsel urges that the applicable law is that found in the recent case of Holland v. Buckley, La., 305 So.2d 113 (La.1974). He urges that the rationale stated in the decision in Holland is that "In the crowded society of today, the burden of harm caused by an animal should be borne by its master who keeps him for his own pleasure or use rather than by an innocent victim injured by the animal." 305 So.2d 113 at 120. This reasoning is particularly applicable, he says, "on a heavily traveled state blacktop highway where there are no stock at large signs, and where it has been the custom for over 20 years for the landowner to maintain adequate fences to enclose their cattle."
The decision in Holland was a significant departure from prior Louisiana jurisprudence dealing with an owner's liability for harm caused by his animals. In Holland the plaintiff sued to recover for personal injuries suffered as a result of a dog bite. In finding liability for the "first bite", the court overruled a long line of jurisprudence which had held in accordance with the general rule in other American jurisdictions (See Restatement, 2d Torts), *510 that an owner of a dog is only liable if he knows or should know of the vicious propensities of his animal.
The basis for the decision in Holland is LSA-C.C. Article 2321. It provides in pertinent part:
"The owner of an animal is answerable for the damage he has caused;"
Justice Tate, writing for the majority in Holland, considers in detail the French authorities on the meaning of Article 2321. The court found that since the article was drawn from French sources, its interpretation should be in accord with the French authorities. The court concludes:
"We hold, therefore, that the correct interpretation of Civil Code Article 2321 is as follows: When a domesticated animal harms another, the master of the animal is presumed to be at fault. The fault so provided is in the nature of strict liability, as an exception to or in addition to any ground of recovery on the basis of negligence, Article 2316. The owner may exculpate himself from such presumed fault only by showing that the harm was caused by the fault of the victim, by the fault of a third person for whom he is not responsible, or by a fortuitous event."
In the instant litigation, the applicable law is not only that provided by LSA-C.C. Article 2321, but also includes special statutes enacted by our Legislature to deal with a very particular and specified situation. LSA-R.S. 3:2803 provides that "No person owning livestock shall knowingly, willfully or negligently permit his livestock to go at large upon the following public highways of this state:" (Then follows a list of the highways covered by the statute.)
Jurisprudence interpreting this statute holds that where an automobile strikes a cow on one of the highways listed, the owner of the animal is presumed to be at fault for allowing it to be upon the highway. He has the burden of exculpating himself from negligence by showing that he has taken reasonable precautions to enclose his livestock. If the animal escaped from an enclosure, the owner has the burden to show how it escaped in order to show his complete freedom from fault. Young v. Sentry Insurance Company, 315 So.2d 93 (La.App.3rd Cir. 1975) and the authorities cited therein.
Jurisprudence has also established the rule that on highways not covered by LSA-R.S. 3:2803, there is no presumption of negligence on the part of the owner of an animal struck by a vehicle on the highway. In Wortham v. Owens, 200 So.2d 781 (La.App.3rd Cir. 1967), the owner of a cow struck and killed by a negligent motorist on such a highway, was allowed to recover the value of the animal. See also Thigpen v. Stockman, 66 So.2d 364 (La.App.1st Cir. 1953).
Jurisprudence has also established the rule that in "open range" areas, i. e., in areas where there is no state statute or local ordinance prohibiting an owner from allowing his animals to roam at large, the owner is under no duty to keep his domestic animals enclosed. See Bryant v. McCann, 297 So.2d 262 (La.App.3rd Cir. 1974) and the cases cited therein.
The liability which the Legislature has provided as to animals on the highways listed in LSA-R.S. 3:2803 may be assimilated to the "presumed fault" concept of liability under Holland. The significant difference is that the Legislature has expressly included within this liability only those damages caused upon the listed highways. It has intentionally excluded application of this type of liability to "open range" highways.
Our Legislature has enacted Civil Code Article 2321 to deal with damages caused by animals. That provision of our law has *511 been interpreted by our Supreme Court and its application has been defined with respect to dogs. Holland v. Buckley, supra. With respect to cattle, however, our Legislature has seen fit to enact a statute generally applicable, but special in effect, to deal with the singular question of liability of owners of cattle for damages caused on the public highways of this state. While the decision of our Supreme Court in Holland controls construction of LSA-C.C. Article 2321 with respect to dogs, it does not control this case involving damages caused by a cow on a highway. Our Legislature has enacted special statutes to control this situation. It is not within the province of this Court to repeal an express, clear and explicit statute of this state.
Counsel for plaintiff-appellant urges that under the recent Second Circuit case of Womack v. Rhymes, 300 So.2d 226 (La.App.2d Cir. 1974), the rule of the Holland case was made applicable to accidents involving cattle on all highways. A reading of that decision, however, indicates that the court was applying the general and well established jurisprudential rule that where the "stock law" (LSA-R.S. 3:2803) is applicable, an owner of livestock is answerable in damages if even the slightest degree of negligence on his part is shown. The decision departed in no way from that of the prior judicial decisions on the subject.
Plaintiff's second specification of error is that the trial judge failed to charge the jury that if it found "custom" applicable, defendant should be held liable. Counsel urges that the evidence indicated that a longstanding custom had been established by the owners of land adjoining Louisiana Highway 12 to keep their property completely fenced, enclosed and separated from the highway. He urges that if such was established to be the custom, that failure by defendant Upchurch to maintain fences along the property where his cattle grazed should be deemed to constitute negligence and that the trial judge should have so charged the jury.
In his instructions, the trial judge stated, as to custom: "(c)ustom may be regarded as a matter proper for consideration in determining whether or not sufficient care has been exercised in a particular case, but it is not conclusive or controlling."
We believe the trial judge correctly and adequately charged the jury as to custom. In the absence of a statute, custom is a rule of action having the force of law resulting from a long series of actions constantly repeated, which, by uninterrupted acquiescence, acquires its force by common consent. Lewis v. Success, 18 La.Ann. 1 (1966). Though custom may acquire the force of and become a part of the law of the land, Tyson v. Laidlaw, 18 La. 380 (1841), a statutory rule of law cannot be changed nor its applicability affected by any local custom. Robertson v. Western Marine & Fire Insurance Company, 19 La. 227 (1841); Devlin v. His Creditors, 2 La. 361 (1831). While custom does possess a niche in our Louisiana law of torts, its application is limited to consideration in determining whether sufficient care has been exercised in a particular case. Landry v. News-Star-World Publishing Corporation, 46 So.2d 140 (La.App.2d Cir. 1950); Tete, The Code, Custom and the Courts: Note Toward a Louisiana Theory of Precedent, 48 Tul. L. Rev. 1, page 15. The trial judge accurately applied this rule.
We conclude the trial judge correctly charged the jury as to the law at issue here. Clearly, there was no manifest error by the jury in its finding, under these charges, that the defendant was free of negligence.
Having decided defendant was not negligent, we do not reach the issue of plaintiff's contributory negligence.
For the reasons assigned, the judgment of the district court is affirmed. All costs *512 of this appeal are to be paid by the plaintiff-appellant.
AFFIRMED.
DOMENGEAUX, J., concurs in the decree.